IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JEANETTER GRAHAM INDIVIDUALLY AND AS WRONGFUL DEATH BENEFICIARY OF ALBERT GRAHAM, DECEASED — PLAINTIFF

V. — CAUSE NO. 2:13CV67KS-MTP

ALEX HODGE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SHERIFF OF JONES COUNTY; JONES COUNTY, MISSISSIPPI AND DEPUTY "JOHN DOE" IN HIS OFFICIAL CAPACITY — DEFENDANTS

**********************************************************

**DEPOSITION OF DWIGHT NATHAN FAYARD, II**

Taken at the offices of Jones County Courthouse, 415 North 5th Avenue, Laurel, Mississippi, on Thursday, June 13, 2014, beginning at approximately 12:56 p.m.

**********************************************************

APPEARANCES:

**EVERETT T. SANDERS, ESQUIRE**
Sanders Law Firm
Post Office Box 565
Natchez, Mississippi 39121
PRESENT AND REPRESENTING THE PLAINTIFF

**JASON E. DARE, ESQUIRE**
Wyatt, Tarrant & Combs
Post Office Box 16089
Jackson, Mississippi 39236-6089
PRESENT AND REPRESENTING DEFENDANT ALEX HODGE AND JONES COUNTY, MISSISSIPPI

REPORTED BY:

**TRUDIE QUINN**
Raven Court Reporting
Post Office Box 180506
Richland, Mississippi 39218
(601) 932-5354




EXHIBIT 13

INDEX

PAGE

Style, Number and Appearances .................... 1

Index ............................................ 2

EXAMINATION OF DWIGHT NATHAN FAYARD, II:

By Mr. Sanders .......................... 3

Reporter's Page ................................. 11

Signature Page .................................. 12

Certificate of Reporter ......................... 13

- o -

P R O C E E D I N G S

DWIGHT NATHAN FAYARD, II,

called as a witness, having been duly sworn,

was examined and deposed as follows:

EXAMINATION BY MR. SANDERS:

Q. Would you state your name, please.

A. Dwight Nathan Fayard, II.

Q. And how are you employed?

A. Corrections at the sheriff's office.

Q. What is your rank?

A. Just corrections officer.

Q. Corrections officer?

A. Yes, sir.

Q. All right. Officer Fayard, my name is Everett Sanders. I'm attorney for Mrs. Jeanetter Graham who is the plaintiff in this lawsuit. Have you given a deposition before?

A. No, sir.

Q. Okay. I'll be asking questions. If you do not understand my question, you can ask me to repeat it or explain it, otherwise if you respond I'm going to assume that you understood what I was saying in your responses to my questions. Is that fair?

A. Yes, sir.

BY MR. SANDERS: General stipulations?

BY MR. DARE: Standard stipulations pursuant to the Federal Rules of Civil Procedure except as to form.

BY MR. SANDERS: All right.

Q. How long have you been employed by the Jones County Sheriff's Office?

A. I was employed back in -- actually I was employed a total of twice with them. I was employed through Sheriff Dykes for, I want to say roughly a year, and I had come back under Sheriff Hodge in 2008 -- I want to say it's 2008, I think so.

Q. What are your duties and responsibilities?

A. Duties and responsibilities is safety and security of the jail, making sure the inmates are secure at all times, feeding, taking care of just their general complaints.

Q. Are you familiar with the policies and procedures of the sheriff's office as they relate to emergency medical services?

A. I've been trained in them but, honestly, I can't tell you word for word.

Q. When you say you were trained, what kind of training have you had?

A. In what kind of specifics?

Q. Correctional training.

A. I'm a certified police officer.

Q. So you've been to the police academy?

A. Yes, sir.

Q. What about training in emergency medical?

A. I was a firefighter back in '05. I was a volunteer, stayed volunteer for a while. I'm trying to get all the dates and everything, it's been a while. I was trained in EMS.

Q. You run the gamut in first responders. Okay. Directing your attention to -- well, first of all, did you know Albert Graham?

A. No, sir, I did not.

Q. Directing your attention to April the 5th, 2010. Did you at that time come in contact with one Albert Graham?

A. Yes, sir.

Q. Tell me as best you recall the circumstances and what happened?

A. Okay. We were in the control room which is our central control area and a couple of the inmates from -- I want to say it was 160.

It was the zone area that Mr. Graham was in, and they had started knocking on the windows and hitting the call button, and me and Sergeant Hare at that time, we went to 160 and walked in, and they said Mr. Graham apparently

was having a seizure, and he was aware.

He was looking around but he wasn't verbal. He knew we were there but he really wasn't saying anything, and Sergeant Hare had asked me to go get the blood pressure machine to let him take his blood pressure.

And the batteries was going out or something was wrong with the machine and we ended up taking it back to central. It's been a while, I'm trying to piece everything together.

Sergeant Hare had left to call the nurse, call Nurse Johnston, and at that time Mr. Graham appeared to be where he was not breathing real well.

There was another officer that had come in with me, and I went to the control room to get a pocket mask as just a safeguard, and when I had come back in, Mr. Graham, his lips started to turn blue, real dark blue.

And me and the other officer picked him up off his rack and put him on the floor and I began chest compressions and breathing for him.

Q. Who was the other officer?

A. Santana Benjamin.

Q. Was Mr. Graham breathing when he left the cell block?

A. I was breathing for him.

Q. When you say you were breathing for him, what

were you doing?

A. Respirations for him.

Q. What is a CPR mask and how does it work?

A. The face mask?

Q. Yeah.

A. It's what's called a pocket mask. It almost looks like a cup, kind of like if you put your hands like this, that's what it's gonna look like and it's gonna have -- we always call it a straw.

It's gonna have a one-way valve, air comes in but nothing comes up, and what you do is you put that over the nose and the face and you would tilt the head, lift the chin and start doing respirations.

Q. Was Sergeant Hare involved in the respirations?

A. He was doing chest compressions, yes, sir.

Q. And you were?

A. I was breathing for him, yes, sir, which Sergeant Hare actually relieved me from chest compressions because I was doing the chest compressions and the breathing doing the rotations.

Q. Did you accompany him to the ambulance?

A. Yes, sir.

Q. Once he was in the ambulance, did they do anything to him to assist him with his breathing or?

A. I know he was intubated, I know that, but as

far as pushing any kind of medicines or anything, I don't know, because I was concentrated strictly on respirations.

Q. Did you do any kind of report?

A. Yes, sir.

Q. And where was that report filed?

A. In the control room.

Q. When the Mississippi Bureau of Investigations conducted an investigation, did they talk with you?

A. No, sir.

Q. I hand you what is JC085. Is that your report?

A. Yes, sir.

Q. If he was having problems breathing, what was the purpose of getting a blood pressure cup?

A. I honestly can't answer that. That wasn't my call.

Q. The batteries were down in that?

A. It appeared to, yes, sir.

Q. Do you know if there is any kind of protocol that requires the blood pressure cup to be checked on a periodic basis?

A. To my knowledge as just an officer, no, sir, I'm not sure.

Q. I noticed you said his lips had turned blue. Did he ever regain any blood flow in his lips?

BY MR. DARE: Object to form.

Q. Did his lips ever turn any other color other than blue while you were there?

A. No, sir.

Q. Did you ever determine Mr. Graham's cause of death?

A. No, sir, I didn't.

Q. Were you present when Mr. Graham was booked in?

A. No, sir, I was not.

Q. Are you involved in the booking?

A. I was trained in booking, yes, sir.

Q. Do you perform that?

A. I do, yes, sir.

Q. Were you doing that in 2009?

A. Yes, sir.

Q. Do you know Christopher Hillman?

A. I vaguely remember him.

Q. Do you know where he lives?

A. No, sir, I sure don't.

Q. Do you know where he was from?

A. I want to say Laurel, I think. It's been a while since I've heard that name.

Q. Do you know the circumstances around his departure?

A. No, sir.

Q. Where do you live?

A. Ellisville.

Q. Do you know Mrs. Graham?

A. No, sir, I sure don't.

Q. As far as you know, you've not had any contact with her?

A. No, sir, I sure haven't.

BY MR. SANDERS: I don't have any further questions.

BY MR. DARE: Nor do I.

(CONCLUDED 1:10 P.M.)

R E P O R T E R ' S P A G E

I, Trudie Quinn, in and for the State of Mississippi, the officer before whom this sworn testimony was taken, do hereby state on the record:

That due to interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talk-overs; that same is the proper method for a court reporter's transcription of proceeding; that the dashes (--) do not indicate that words or phrases have been left out of this transcript, and that any words and/or names which could not be verified through reference material have been denoted with the phrase (phonetic).

- o -

CERTIFICATE OF DEPONENT

DEPONENT: Dwight Nathan Fayard, II
DATE: June 13, 2014
CASE STYLE: Jeanetter Graham v. Alex Hodge and Jones County
ORIGINAL TO: Everett Sanders

I, the above-named deponent in the deposition taken in the herein styled and numbered cause, certify that I have examined the deposition taken on the date above as to the correctness thereof, and that after reading said pages, I find them to contain a full and true transcript of the testimony as given by me.

Subject to those corrections listed below, if any, I find the transcript to be the correct testimony I gave at the aforementioned time and place.

| Page | Line | Comments |
|---|---|---|
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |
| ______ | ______ | ______________________________ |

This the _____ day of _____, 2014.

_____________________
WITNESS

State of Mississippi
County of ________________

Subscribed and sworn to before me, this the _____ day of _____________, 2014.

My Commission Expires:

________________________ ______________________
Notary Public

CERTIFICATE

I, Trudie Quinn, Court Reporter and Notary Public, in and for the State of Mississippi, hereby certify that the foregoing contains a true and correct transcript of the proceedings as taken by me at the time and place heretofore stated and later reduced to typewritten form by computer-aided transcription under my supervision and to the best of my skill and ability.

I further certify that the witness was placed under oath to truthfully answer the questions in this matter.

I further certify that I am not in the employ of or related to any counsel or party in this matter and have no interest, monetary or otherwise, in the final outcome of the proceedings.

Witness my signature and seal, this the 4th day of July 2014.

TRUDIE QUINN, COURT REPORTER
CCR# 1368

My commission expires:
August 9, 2015

